**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

---

**SONJA SENTER** **PLAINTIFF**

**V.** **CASE NO. 1:05CV100**

**CINGULAR WIRELESS, LLC**
**and RENEE HUGHES** **DEFENDANTS**

---

## MEMORANDUM OPINION

This cause comes before the Court on the plaintiff's motion for remand [24-1] and the defendants' motion to dismiss [11-1]. The Court has reviewed the briefs and exhibits and is prepared to rule.

The plaintiff is Sonja Senter, a resident of Tupelo, Mississippi. The defendants are Cingular Wireless, a Delaware corporation, and Renee Hughes, a resident of Tupelo, Mississippi employed by Cingular Wireless as manager of its Tupelo store. Senter was also an employee of Cingular Wireless at its Tupelo store until on or about December 1, 2004. On that day, two "unruly" customers entered the store and demanded that Senter activate a phone which the customers had acquired from another company. The customers became very rude and belligerent with Senter, and one of the two claimed to be a police officer and kept putting his hands in his pockets, which led Senter to believe that he might be armed. Consequently, Senter called the police and accused the customers of being trespassers. Police did come to the store and interview everyone there but did not arrest anyone. Subsequently, Cingular Wireless terminated Senter upon the recommendation of Hughes on the grounds that it was improper for Senter to have summoned the police. Senter concedes that Hughes was acting in the course and scope of her employment as store manager when

she recommended Senter's termination.

On April 14, 2005, Senter filed this action in the Lee County Circuit Court, alleging wrongful discharge in retaliation for her act of reporting "illegal activity."[1] The complaint seeks actual and punitive damages in the sum of $199,000.00. The defendants timely removed the case to federal court, alleging that Hughes was fraudulently joined to defeat diversity. The defendants later filed a motion to dismiss under Rule 12(b)(6), while Senter filed a motion for remand.

## ANALYSIS

### I. THE MOTION TO REMAND.

The removing party, which is urging jurisdiction on the court, bears the burden of demonstrating that jurisdiction is proper due to fraudulent joinder. Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42 (5th Cir. 1992). The Fifth Circuit has stated:

> The burden of persuasion placed upon those who cry "fraudulent joinder" is indeed a heavy one. In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.

B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). In evaluating a motion to remand, the court considers summary judgment-type evidence to pierce the pleadings. This evidence may include the pleadings, affidavits and deposition transcripts. Hart v. Bayer Corp., 199 F.3d 239, 246-47 (5th Cir. 2000). The Fifth Circuit has recently reaffirmed that it "is insufficient that there be a

---

[1]In some of its responsive briefs, Senter suggests that she may also have a claim against Renee Hughes for malicious interference with contract. No such claim is raised by the complaint, and no motion to amend the complaint to add such a claim is currently pending. The Court is not impressed with the plaintiff's apparent effort to unilaterally amend the complaint via responsive pleadings and will not consider any arguments pertaining to malicious interference with contract.

mere theoretical possibility of recovery," to the contrary, there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." Travis v. Irby, 326 .3d 644, 648 (5th Cir. 2003)(citing Badon v. RJR Nabisco Inc., 224 F.3d 382, 286 (5th Cir. 2000)).

Recently, the Fifth Circuit placed a significant limit on the doctrine of fraudulent joinder, holding that a district court could not find that a defendant had been fraudulently joined if the grounds provided for dismissing that defendant applied equally well to the diverse defendants:

> [W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such-an allegation that, as phrased by the Supreme Court in Chesapeake & O.R. Co. v. Cockrell,"the plaintiff's case [is] ill founded as to all the defendants."

Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 574 (5th Cir. 2004). Thus, under Smallwood, the Court may only find that a defendant has been fraudulently joined if it discerns a basis for dismissing the allegedly fraudulent defendant which is not also applicable to the diverse defendant.

The defendants argue that such an independent basis plainly exists, as Renee Hughes was an agent of Cingular Wireless who was acting within the course and scope of her duties at the time of the incidents giving rise to this lawsuit. Accordingly, they argue, Hughes cannot be found independently liable for any actions she took in the performance of her duties. The Court agrees with this analysis.

As the defendants note, Mississippi law is clear that an agent for a disclosed principal cannot be held liable for a breach by the disclosed principal of a contract to which she is not a party. Moore

v. Interstate Fire Ins. Co., 717 F.Supp. 1193, 1196 (S.D. Miss. 1989). In the case at bar, it is undisputed that Cingular Wireless made the decision at the corporate level to terminate Senter and that Hughes had no power to unilaterally terminate her. It is undisputed that Hughes was acting within the course and scope of her duties when she recommended terminating Senter. The only claim made by the complaint pertains to wrongful termination, a termination which was made by Cingular Wireless and not by Hughes. The complaint raises no independent basis of liability against Hughes. In light of Hughes' status as a disclosed principal, there is no reasonable possibility of Mississippi law permitting recovery against Hughes for wrongful termination. Accordingly, the Court finds that Hughes has been fraudulently joined to defeat diversity. All claims against Hughes are therefore dismissed, and complete diversity exists between Senter and the remaining defendant.

**II. THE MOTION TO DISMISS.**

Cingular Wireless next argues that it is entitled to a dismissal of Senter's claims against it under Rule 12(b)(6).

> In considering a motion to dismiss, the complaint should be construed in favor of the plaintiff, and all facts pleaded should be taken as true. Motions "to dismiss for failure to state a claim [are] 'viewed with disfavor, and [are] rarely granted.'" A Rule 12(b)(6) dismissal will not be affirmed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

S. Christian Leadership Conference v. Supreme Ct. of La., 252 F.3d 781, 786 (5th Cir. 2001)(citations omitted). The parties agree that Mississippi is an "employment-at-will" state and that no express contract of employment exists. See generally Buchanan v. Ameristar Casino Vicksburg, Inc., 852 So.2d 25, 26 (Miss. 2003)(noting that "Mississippi is an employment at will state"). Consequently, Cingular Wireless is customarily entitled to terminate any of its Mississippi

employees for good cause, bad cause or no cause at all. Bobbitt v. The Orchard Ltd., 603 So.2d 356, 360-61 (Miss. 1992). However, Senter argues (and Cingular Wireless concedes) that an exception to the general at-will employment rule exists when an employee is terminated for either (1) refusing to participate in an illegal act or (2) reporting an illegal act of his employer to the employer or anyone else. McArn v. Allied Bruce Terminix Co., Inc., 626 So.2d 603, 607 (Miss. 1993).

The parties disagree, though, on the scope of the McArn exception. Cingular Wireless interprets McArn to limit itself to situations in which an employee is terminated for reporting the illegal acts of the employer or a fellow employee, while Senter argues that it should extend to situations in which the employee is terminated for reporting the illegal acts of a customer with no existing contractual relationship with the employer. Although no Mississippi court has ever interpreted the McArn exception as broadly as Senter would argue, the Court cannot say that her interpretation is completely beyond the pale. For example, if a hypothetical employee reported a customer to the police for conducting a drug sale on the store premises and was later terminated, the Mississippi Supreme Court might well conclude that the public policy concerns raised by McArn justified extending the doctrine to such a situation. On the other hand, the Mississippi Supreme Court has steadfastly resisted invitations to extend the McArn doctrine almost since its inception and has consistently limited the doctrine to the situations in which the terminated employee is a whistleblower who exposes the criminal activities of his employer and/or co-workers. <cite>

Ultimately, the scope of the McArn doctrine is a moot point, however. Even if the Court were to adopt Senter's expansive reading of the exception, she would still be required to show that she actually reported illegal conduct. Accepting all the allegations of her complaint as true, however, the Court still fails to see any illegal conduct sufficient to justify application of McArn. Senter was

confronted with two belligerent and unruly customers, one of whom identified himself as a police officer and "kept putting his hands in his pockets," which somehow led Senter to conclude that he might be armed. She then called the police to report what she considered to be "trespassing." The police, however, arrested no one on any charges, let alone criminal trespass, and there is no indication that the male customer was armed (or that Senter had any basis for believing that he was other than the fact that he put his hands in his pockets, an otherwise innocuous act).

Senter cites no authority for the proposition that the McArn exception shields employees who report alleged criminal activity when that activity ultimately turns out to be not criminal at all. To the contrary, the Fifth Circuit came to just the opposite conclusion in King V. Newton County Bd. of Sup'rs, 144 Fed. Appx. 381, 386 (5th Cir. 2005). There, the plaintiff, King, argued that she was terminated for exposing the mismanagement of almost $1 million by the Board of Supervisors, and that her termination fell within the McArn exception. King, 144 Fed.Appx. at 385. The Fifth Circuit disagreed, holding that, since the State Auditor refused to bring any criminal charges against the Board, the activity King exposed was not illegal in nature and thus the exception did not apply.

The Court concludes that the reasoning of King is analogous to the case at hand. Senter summoned police to deal with what she considered to be criminal activity. Police came and concluded that no arrest was warranted. Accordingly, no criminal activity capable of invoking the McArn exception took place, and Senter's termination falls within Mississippi's standard at-will employment scheme. Since no exception to at-will employment is implicated, Cingular Wireless is entitled to dismissal of this case pursuant to Rule 12(b)(6).

**CONCLUSION**

Based on the foregoing analysis, it is hereby ORDERED that the plaintiff's motion for

remand is DENIED and that the defendants' motion to dismiss is GRANTED. A separate order to that effect shall issue this day.

This is the 10th day of February, 2006.

                                      **/s/ Michael P. Mills**
                                      **UNITED STATES DISTRICT JUDGE**